Filed 1/23/26  P. v. Stathum CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B337730 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. XEAKA025223-02 |
| v. | |
| JASON JAMES STATHUM, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

A court sentenced Jason James Stathum to a term of life without the possibility of parole after a jury found him guilty of committing a special circumstance murder when he was 22 years old.  Nearly three decades later, Stathum filed a request to initiate a proceeding under *People v. Franklin* (2016) 63 Cal.4th 261, seeking to make a record of information relevant to a future youth offender parole hearing.  The superior court denied the request on the ground that Stathum's sentence renders him ineligible for relief.  On appeal, Stathum argues the statute that makes him ineligible—Penal Code section 3051, subdivision (h) (section 3051(h))[1]—violates the equal protection guarantees found in the federal and California Constitutions.  He also argues the denial of a youth offender parole hearing renders his sentence cruel or unusual punishment in violation of the California Constitution.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1996, a jury convicted Stathum of first degree murder (§ 187, subd. (a)) and two counts of second degree robbery (§ 211).[2]  The jury found true (1) the special circumstance that the murder occurred while Stathum was engaged in committing a robbery (§ 190.2, subd. (a)(17)) and (2) that he personally used a firearm in committing all three crimes (§ 12022.5, subd. (a)).  The court sentenced Stathum to life in prison without the possibility of parole plus five years.

---

[1]	References to statutes are to the Penal Code.

[2]	Stathum's arguments on appeal do not concern the facts of his crimes.  Therefore, we take those facts from a prior appellate opinion by this court.  (See *People v. Stathum* (May 29, 2025, B333909) [nonpub. opn.].)

2

In October 2022, Stathum filed a motion to initiate a proceeding under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) and *In re Cook* (2019) 7 Cal.5th 439 (*Cook*), seeking to make a record of information relevant to a future youth offender parole hearing. Stathum argued he is entitled to a youth offender parole hearing under equal protection principles. According to Stathum, "18 to 25 year olds sentenced to LWOP are similarly situated to those in the same age group who have been sentenced to the functional equivalent [of] LWOP. Constitutionally, and practically, they have the same sentence. There is no rational basis for treating them differently."

The superior court appointed counsel to represent Stathum. Counsel filed a motion to appoint defense experts to prepare for a *Franklin* hearing. In support of the request, counsel cited an appellate decision—*People v. Hardin* (2022) 84 Cal.App.5th 273—holding young adult LWOP offenders are entitled to *Franklin* hearings. The superior court granted Stathum's motion.

In March 2024, the California Supreme Court decided *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*), which reversed the appellate decision upon which Stathum relied. The next month, the superior court denied Stathum's request for a *Franklin* hearing, citing the Supreme Court's recent decision.

Stathum timely appealed.

## DISCUSSION

### 1.  *Relevant law*

Our Legislature enacted section 3051 in light of United States Supreme Court decisions that recognized the lessened culpability and greater prospects for reform that distinguish juvenile from adult offenders. (See Sen. Bill No. 260 (2013–2014 Reg. Sess.) § 1; *Graham v. Florida* (2010) 560 U.S. 48; *Miller v.*

3

*Alabama* (2012) 567 U.S. 460.) Section 3051 requires the Board of Parole Hearings to conduct a "youth offender parole hearing" at specified times during the incarceration of certain youthful offenders. (See § 3051, subds. (a)(1), (b); *Franklin, supra*, 63 Cal.4th at p. 277.)

Section 3051 originally applied to offenders who were younger than 18 years old when they committed the controlling offense. (Stats. 2013, ch. 312, § 4.) Effective January 1, 2016, the Legislature expanded relief to offenders younger than 23 years old. (Stats. 2015, ch. 471, § 1.) The Legislature expanded relief again in 2018, raising the age limit to 26 years old. (Stats. 2017, ch. 675, § 1.)

Under the current version of section 3051, offenders who were younger than 26 years old when they committed the controlling offense generally are eligible for a youth offender parole hearing if they were sentenced to a determinate term or a life term with the possibility of parole. (§ 3051, subd. (b).) Offenders sentenced to LWOP are entitled to a hearing only if they were younger than 18 years old when they committed the controlling offense. (*Id.*, subd. (b)(4).) The statute explicitly states it does not apply to "cases in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." (*Id.*, subd. (h).)

In *Franklin*, the California Supreme Court interpreted section 3051 to require a youth offender have a "sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Franklin*, *supra*, 63 Cal.4th at p. 284.) These hearings are commonly referred to as *Franklin* hearings. At a *Franklin* hearing, the offender and the

People have the opportunity to "put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors" at the time of the offense. (*Ibid*.) In *Cook, supra*, 7 Cal.5th 439, the California Supreme Court held "an offender entitled to a hearing under section[ ] 3051 . . . may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final." (*Id*. at p. 451.)

## 2. *Section 3051(h) does not violate equal protection*

Stathum was 22 years old when he committed the offense that resulted in an LWOP sentence. As Stathum acknowledges, because he was not a juvenile when he committed the controlling offense, and because he was sentenced to LWOP, he is ineligible for a youth offender parole hearing under the plain language of section 3051(h). Nevertheless, Stathum argues he is entitled to a *Franklin* hearing because section 3051(h) violates the equal protection guarantees found in the United States and California Constitutions.

"At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288 (*Chatman*).) Where the challenged law is not based on a suspect classification and does not burden fundamental rights, the law denies equal protection "only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose. [Citation.] This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that

5

democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*Id.* at pp. 288–289; see *In re Murray* (2021) 68 Cal.App.5th 456, 463–464 (*Murray*) [applying rational basis review to claim section 3051 violates equal protection].)

"[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question.  The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Hardin, supra*, 15 Cal.5th at pp. 850–851.)

"A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. . . .  The underlying rationale for a statutory classification need not have been ' "ever actually articulated" ' by lawmakers, and it does not need to ' "be empirically substantiated." ' " (*Chatman, supra*, 4 Cal.5th at p. 289.)  We independently review equal protection claims.  (*People v. Morales* (2021) 67 Cal.App.5th 326, 345 (*Morales*).)

In *Hardin, supra*, 15 Cal.5th 834, a defendant serving an LWOP sentence for crimes he committed when he was 25 years old appealed the denial of his request for a *Franklin* hearing.  (*Id.* at p. 840.)  The defendant raised two equal protection arguments.  First, he argued section 3051(h) violates equal protection by treating differently young adult offenders sentenced to LWOP and juvenile offenders sentenced to LWOP.

Second, he argued section 3051(h) violates equal protection by treating differently young adult offenders sentenced to LWOP and young adult offenders serving parole-eligible life sentences. The Court of Appeal rejected the defendant's first argument, but it agreed that the statute violates equal protection by treating differently LWOP and non-LWOP young adult offenders. (See *Hardin*, at pp. 840–841.)

The California Supreme Court granted review to resolve a split among appellate courts as to whether section 3051(h)'s exclusion of young adult LWOP offenders violates equal protection. (*Hardin, supra*, 15 Cal.5th at p. 842 & fn. 1.) In the Supreme Court, the defendant argued only that section 3051(h) violates equal protection by treating differently LWOP and non-LWOP offenders; he did not argue section 3051(h) violates equal protection by treating differently young adult and juvenile LWOP offenders. (*Hardin*, at pp. 846–847.) The California Supreme Court reversed the Court of Appeal, holding the defendant failed to demonstrate that section 3051(h)'s "exclusion of offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18 from youth offender parole eligibility is irrational." (*Hardin*, at p. 864.)

Here, Stathum advances the equal protection argument the defendant in *Hardin* abandoned before the Supreme Court. Specifically, he argues the Legislature lacked any rational basis to grant youth offender parole hearings to juvenile LWOP offenders, while denying hearings to young adult LWOP offenders, like himself. Stathum contends *Hardin* is not dispositive on that issue because the Supreme Court did not specifically consider it.

7

Courts of Appeal have unanimously rejected Stathum's equal protection argument. (See, e.g., *Murray, supra*, 68 Cal.App.5th at p. 463; *Morales, supra*, 67 Cal.App.5th at p. 347; *People v. Jackson* (2021) 61 Cal.App.5th 189, 196–197; *People v. Sands* (2021) 70 Cal.App.5th 193, 204; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779–780.) The court in *Sands* explained the "Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age. For juvenile offenders, such a sentence may violate the Eighth Amendment. [Citations.] But the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26. . . . [T]he Legislature could rationally decide to remedy unconstitutional sentences but go no further." (*Sands*, at p. 204.) We agree with these courts and reject Stathum's equal protection argument for the same reasons.[3]

**3.    *Section 3051(h) does not render Stathum's LWOP sentence cruel or unusual***

Stathum argues, absent the possibility of a youth offender parole hearing, an LWOP sentence imposed on a young adult offender constitutes cruel or unusual punishment in violation of the California Constitution.

The Eighth Amendment to the federal Constitution prohibits "cruel and unusual punishment[ ]." (U.S. Const., 8th Amend.) The California Constitution affords somewhat

_____

[3]    To the extent Stathum continues to argue section 3051(h) violates equal protection by treating differently young adult LWOP and non-LWOP offenders, we reject his argument in light of *Hardin.* (See *Hardin, supra*, 15 Cal.5th at pp. 838–840; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456.)

greater protection to criminal defendants by prohibiting "[c]ruel *or* unusual punishment." (Cal. Const., art. I, § 17, italics added; see *People v. Haller* (2009) 174 Cal.App.4th 1080, 1092.) "A punishment is cruel or unusual in violation of the California Constitution 'if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.] Because it is the Legislature's function to define crimes and prescribe punishments, the judiciary should not interfere 'unless a statute prescribes a penalty "out of all proportion to the offense." ' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*).)

Stathum does not argue his sentence was cruel or unusual at the time it was imposed. Nor could he, as the United States and California Supreme Courts have held the Legislature may prescribe the most severe punishments for adult offenders, i.e. offenders who are at least 18 years old. (See *Roper v. Simmons* (2005) 543 U.S. 551, 574 [18 is the "age at which the line for death eligibility ought to rest"]; *People v. Flores* (2020) 9 Cal.5th 371, 429 (*Flores*) [rejecting argument the death penalty may not be constitutionally applied to offenders who were 21 years of age or younger].)

Nevertheless, Stathum argues his LWOP sentence became constitutionally infirm once the Legislature granted youth offender parole hearings to some offenders over the age of 18. According to Stathum, by extending relief to non-juvenile offenders, the Legislature rejected 18 years old as the dividing line between adults and children. He asserts the Legislature instead recognized young adults up to age 26 have an immature

9

mentality and should be given the opportunity to demonstrate eligibility for parole.

In making this argument, Stathum overlooks that in 2020 —four years after the Legislature extended youth offender parole hearings to young adult offenders up to age 23, and two years after it extended the relief to offenders up to age 26— the California Supreme Court held the death penalty for young adult offenders is not cruel and unusual punishment. (See *Flores*, *supra*, 9 Cal.5th at p. 429.) As the court in *In re Williams* (2020) 57 Cal.App.5th 427 aptly put it, if the ban on cruel and unusual punishment "does not prohibit a sentence of death for [young adult offenders], then most assuredly, it does not prohibit the lesser LWOP sentence." (*Id.* at p. 439.) Although *Flores* was decided on federal constitutional grounds (*Flores*, at p. 429), Stathum suggests no reason why its reasoning would not also apply to claims under the California Constitution. (See *Baker, supra*, 20 Cal.App.5th at p. 733 [noting the "considerable overlap in the state and federal approaches" to cruel and/or unusual punishment].) Accordingly, we reject Stathum's argument that LWOP sentences imposed on young adult offenders constitute cruel or unusual punishment in violation of the California Constitution. (See *Williams*, at p. 439 [rejecting argument LWOP sentences are cruel and unusual punishment when imposed on 21-year-old offenders]; *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482 [rejecting claim that a functional LWOP sentence for an 18-year-old offender is categorically cruel and/or unusual punishment].)

10

**DISPOSITION**

We affirm the order.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



ADAMS, J.